## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

In re

**ENIVID, INC., et al., formerly known as DIVINE, INC.,**

         Debtors

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

**JAMES B. BOLES, LIQUIDATING TRUST REPRESENTATIVE OF THE LIQUIDATION TRUST, AS ASSIGNEE OF STEWART GROSSMAN, EXAMINER OF ENIVID, INC.,**

         Plaintiff,

v.

**MIKE TURNER, et al.,**

         Defendants

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

In re

**SABINE, INC., et al., formerly known as RoweCom, INC.,**

         Debtors

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

**CHRISTOPHER J. PANOS, TRUSTEE OF THE SABINE, INC. LIQUIDATING TRUST,**

         Plaintiff,

v.

**MIKE TURNER, et al.,**

         Defendants

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

Chapter 11
Case No. 03-11472-JNF and
03-11474-JNF through 03-11478-JNF and
03-12681-JNF through 03-12715-JNF
(Substantively Consolidated)

Adv. P. No. 05-01277

Chapter 11
Case No. 03-10668-JNF
(Substantively Consolidated)

Adv. P. No. 05-01278

## MEMORANDUM

1

# I. INTRODUCTION

The matters before the Court for determination are Motions for Preliminary Injunctions (the "Preliminary Injunction Motions") filed by the Plaintiffs, James B. Boles ("Boles"), Liquidation Trust Representative of the enivid, inc. Liquidation Trust[1] and Christopher J. Panos ("Panos"), Liquidating Trustee of the Sabine, Inc. Liquidating Trust (collectively, the "Plan Trustees"). [2] The Court also has before it a related motion captioned

---

[1] The enivid, inc. Liquidation Trust is dated December 20, 2004 and was established pursuant to the Official Committee of Unsecured Creditors' Amended Plan of Liquidation, dated September 30, 2004, as modified on November 23, 2004. The Court confirmed the Amended Plan of Liquidation on December 8, 2004 in the Chapter 11 substantively consolidated cases of enivid, inc. and its affiliated Debtors. The confirmed plan provided for the substantive consolidation of enivid, inc., formerly known as divine, inc., and 41 related Debtors. Upon the effective date of the Amended Plan of Liquidation, the Debtors were deemed to have transferred their assets to the enivid, inc. Liquidation Trust; the Examiner was deemed to have assigned his rights, defined at ¶ 1.46 of the Plan, to the Liquidation Trust; and the Debtors were deemed to have been liquidated. For purposes of this decision, the Debtors shall be referred to collectively as "enivid." or "Divine." Pursuant to the enivid Liquidation Trust at ¶ 3.2 the Liquidation Trust Representative and the Liquidation Trust were "'representative[s] of the estate' under Section 1123(b)(3) of the Bankruptcy Code and successors of the Debtors under Section 1145 of the Bankruptcy Code."

[2] The Liquidating Trust was established pursuant to the Third Amended Joint Plan of Liquidation proposed by the Debtors and the Creditors' Committee, dated November 23, 2004, and confirmed on December 7, 2004 in the Chapter 11 substantively consolidated cases of Sabine, Inc. and its affiliated Debtors. The confirmed plan provided for the substantive consolidation of Sabine, Inc., formerly known as RoweCom, Inc., and six related Debtors (collectively "Sabine" or "RoweCom"). Divine was the 100% shareholder of RoweCom. The plan proposed in the Sabine case contained provisions similar to those in the plan proposed in the enivid case - - the Debtors were deemed dissolved and their assets transferred to a liquidating trust. Pursuant to Section 9.05 of the Liquidating Trust, '[t]he Liquidating Trust shall be the representative of each Estate pursuant to section 1123 of the Bankruptcy Code and shall have all of the rights, powers and standing of the Debtor in possession under section 1107 of the Bankruptcy Code . . . ."

2

"Joint Motion for Entry of an Order to the Extent Necessary, Approving the Use of the D&O

Policy Proceeds to Fund the Securities Litigation Settlement Preliminarily Approved by the

District Court" (the "Joint Motion") filed by Andrew J. Filipowski ("Filipowski"), Michael

P. Cullinane (Cullinane"), and Paul Humenansky ("Humenansky"), together with other

former officers and directors of Divine, Inc., now known as enivid, inc., and James Tito, and

Frank Waddell (collectively, the "Lead Plaintiffs"), as well as Jeffrey A. Hoover, Patricia

Diamantouros, Mike Turner, James F. Howard and Chris Brown (collectively, with the Lead

Plaintiffs, the "Shareholder Plaintiffs").[3] Panos filed an Opposition to the Joint Motion.

The Plan Trustees, through their Preliminary Injunction Motions, seek an order

restraining the prosecution and settlement of a number of the class actions brought by former

shareholders of Divine against its officers and directors (the "D&O Defendants") for

violations of federal and state securities laws (the "Securities Actions").[4]  The Shareholder

---

The Liquidating Trustee in Sabine has an allowed claim against enivid in the amount of $50,808,071.00.  The enivid and Sabine cases are not substantively consolidated.

[3] A more complete description of the Plaintiffs and Defendants in the securities litigation is contained in the Stipulation of Settlement attached as Exhibit B to the Joint Motion.  The Defendants other than the Securities Litigation Defendants were former directors of Divine, including Tommy Bennett, John Cooper, James E. Cowie, Michael H. Forster, Arthur W. Hahn, Thomas J. Meredith, J. Kevin Nater, and John Rau.

[4] The Defendants in the adversary proceedings commenced by the Trustees are Plaintiffs in various class actions described in detail in Exhibit B to the Joint Motion.  In summary, two class actions are pending in the United States District Court for the District of Massachusetts: *Bobbitt v. Filipowski, et al.*, No. 04-12263-PBS, and *Turner v. Filipowski, et al.*, No. 04-12294-PBS.  The district court consolidated the *Turner* and *Bobbitt* actions on March 16, 2006.  Prior to its consolidation with *Turner*, the *Bobbitt* class action consolidated nine predecessor actions filed in the Northern District of Illinois.  A third

Plaintiffs and Filipowski, Cullinane, Humenansky (the "Intervenors"), who have been

permitted to intervene in the above-captioned adversary proceedings, filed Oppositions to

the Preliminary Injunction Motions. All parties have filed briefs. The Court conducted a

hearing on December 6, 2006 and took the matters under advisement.

 None of the parties requested an evidentiary hearing on the Preliminary Injunction

Motions or the Joint Motion; the facts necessary to determine them are not in dispute.

Accordingly, the Court makes the following findings of fact and rulings of law.

## II. BACKGROUND AND FACTS

 The actions brought by Shareholder Plaintiffs, on behalf of themselves and all others

similarly situated, are now pending in the United States District Court for the District of

Massachusetts. On December 17, 2004, after the commencement of the Securities Actions,

Stewart F. Grossman, the court-appointed Examiner in Divine, filed a 102-page, 17-count

Complaint (Adv. P. No. 04-1439) against four of Divine's directors and officers (Filipowski,

Cullinane, Humenansky, and Jude Sulivan ("Sullivan")),[5] in which he alleged, among other

---

action, *Howard v. Flipowski et al.*, was transferred from the United States District Court
for the Northern District of Illinois to the United States Bankruptcy Court for the
Northern District of Illinois, where it was docketed as Adv. P. No. 05-0092. That action
is now pending in the United States District Court for the District of Massachusetts
(Case No. 06-11072-PBS). James Tito and Frank Waddell are the court-appointed lead
plaintiffs in the *Bobbitt* class action and James F. Howard and Chris Brown are the
named plaintiffs in the adversary proceeding which was transferred to the United States
District Court for the District of Massachusetts from the Illinois bankruptcy court.

 [5] Filipowski served as Divine's Chief Executive Officer and was a member of its
Board of Directors. Cullinane served as Divine's Chief Financial Officer and was a
member of its Board of Directors. Humenansky served as Divine's President and as its
Chief Operating Officer and was a member of its Board of Directors. Sullivan was

things, breaches of the fiduciary duties of care and loyalty (the "Divine Adversary").

Pursuant to the confirmed plan in the enivid case, the Divine Adversary was assigned to, and

now is being prosecuted by, Boles, as the Liquidation Trust Representative of enivid. Panos,

as the Liquidating Trustee of the Sabine, Inc. Liquidating Trust, commenced an action against

Sullivan, RoweCom's sole Director and its Vice-President and Treasurer (Adv. P. No. 05-

1019), for breaches of the fiduciary duties of care and loyalty in which he sought damages

of over $73 million (the "RoweCom Adversary"). Boles and Panos seek to stay the Securities

Actions until such time as their respective actions against the former management of Divine

and RoweCom are adjudicated or settled.

The Defendants in the Securities Actions, which include the directors and officers of

Divine, have sought defense and indemnification coverage under Directors, Officers and

Corporate Liability Insurance Policies (the "D&O Policies"). In 2001 and 2002, Divine

purchased D&O Policies to insure itself, its subsidiaries, including RoweCom, its officers and

directors, as well as the officers and directors of its affiliates, in the aggregate sum of $50

million. The insurance companies have denied coverage for certain acts in policy year two

and have advised that $18.5 million in insurance coverage remains for acts in policy year

one.[6]

---

Divine's Secretary and General Counsel. The Court shall refer to Filipowski, Cullinane and Humenansky as the "Divine Defendants," although Sullivan is also a Defendant in the adversary proceeding originally commenced by the Examiner.

[6] Panos describes the coverage as follows:
The primary policies in these years [2001 and 2002] were issued by Illinois National Insurance Company. The first primary coverage policy has a

In May of 2006, the Shareholder Plaintiffs reached an agreement to settle the Securities

Actions with certain of the D&O Defendants, namely Filipowski, Cullinane and

Humenansky as well as certain other defendants, excluding Sullivan.[7]  The parties to the

Stipulation of Settlement agreed that the D&O Policies would fund the settlement in the sum

of $6.5 million for the period between September 17, 2001 through February 14, 2003.  As a

condition of the settlement, the parties further agreed that this Court must approve use of

$6.5 million of the D&O Policies' proceeds to fund the settlement.  The United States District

Court for the District of Massachusetts preliminarily approved the settlement on August 25,

2006, subject to this Court's approval of the Stipulation of Settlement.  Panos, as Trustee of

the Sabine, Inc. Liquidating Trust, objected to Joint Motion pursuant to which the parties to

the Securities Action seek to secure $6.5 million from the D&O Policies to fund the

settlement, representing that the Plan Trustees have asserted claims under the D&O Policies

---

stated term of July 12, 2001 through July 12, 2002 and provides coverage in
the amount of $10 million.  An additional $20 million in excess coverage
for that year is provided by St. Paul Insurance Company, Lloyds of
London and Chub [sic] Group of Insurance Companies.  The second
primary coverage policy has a stated term of July 12, 2002 through July 12,
2003 and provides coverage in the amount of $10 million.  Additionally
excess coverage in the amount of $10 million is provided by Indian harbor
Insurance Company for that policy year. . . . The Insurers have denied
coverage in the second policy year and have informed the Liquidating
Trustee that less than $18.5 million in coverage remains in the first policy
year after the costs of defense.

Opposition to Joint Motion for Entry of an Order Approving the Use of the D&O Policy
Proceeds to Fund the Securities Litigation Settlement and Supplemental Memorandum
in Support of Request for Injunctive Relief at ¶ 14. *See also* Boles's Complaint at ¶¶ 13-
15.

[7] Sullivan is not a party to the Stipulation of Settlement.

6

to fund any recoveries which they might obtain in the Divine and RoweCom Adversaries.

The D&O Policies are what are known as "wasting policies." In other words, defense costs are part of covered losses, and the insurers only are required to pay up to policy limits no matter how many claims are brought against directors and officers. The insurers are obligated to pay a "Loss" arising from a covered claim up to the limits of coverage. Under the D&O Policies, "Loss" means "damages, settlements, or judgments, and defense costs." Additionally, there is both liability and indemnification coverage up to policy limits. Filipowski, Cullinane, Humenansky, as officers and directors of Divine, and Sullivan as an officer and the sole director of RoweCom, have made claims for indemnification against enivid and Sabine. It is unclear what other assets they may have to satisfy any judgments obtained in the Securities Actions or in the Divine and RoweCom Adversaries;  no party made any offer of proof or argument on this issue.

## III. POSITIONS OF THE PARTIES

### A. The Plan Trustees

The Plan Trustees seek an injunction to preventt the Shareholder Plaintiffs from further prosecuting and settling their respective class actions and obtaining any proceeds of the D&O Policies until the conclusion of the Divine and RoweCom Adversaries to prevent the diminution of proceeds otherwise available to them to fund any recoveries they may obtain in those actions. Relying upon the priority distribution scheme embodied in the Bankruptcy Code, which requires distributions to creditors before shareholders, they urge the Court, in Boles's words, to enjoin the Shareholder Plaintiffs from their attempt to "end-

run the policies of the Bankruptcy Code and state law by racing the Trustee to the courthouse to claim assets that can and should be used to pay creditors."

The Plan Trustees' Preliminary Injunction Motions are predicated on 11 U.S.C. § 105(a), which they submit authorizes the issuance of an order staying lawsuits between third parties such as the Securities Actions.  They contend that the Securities Actions and the proposed settlement will undermine their ability to administer the bankruptcy estates and will adversely impact the distribution to creditors.  Although the Plan Trustees recognize that there is no authority directly on point for their request in case law from the First Circuit, they assert, in reliance upon <u>Monarch Life Ins. Co. v. Ropes & Gray</u>, 65 F.3d 973, 978-79 (1st Cir. 1995), that the United States Court of Appeals for the First Circuit has affirmed the issuance injunctions against third party litigants when bankruptcy estates are adversely affected.  The Plan Trustees, primarily rely on the opinion of the bankruptcy court in <u>Maxwell v. Megliola (In re marchFIRST, Inc.)</u>, 288 B.R. 526 (Bankr. N. D. Ill. 2002), *aff'd*, <u>Megliola v. Maxwell</u>, 293 B.R. 443 (N.D. Ill. 2003), and other authority from outside the First Circuit.

B. <u>The Shareholder Plaintiffs</u>

The Shareholder Plaintiffs oppose the issuance of preliminary injunctions. They argue that 11 U.S.C. § 105(a) does not provide the basis for the extraordinary injunctive relief requested by the Plan Trustees simply because D&O policy coverage exists. They point out that the Plan Trustees' alleged losses are speculative because they have yet to obtain judgments or reach settlements.  In other words, their alleged losses are not covered under

8

the D&O Policies' definitions of "Loss."  Distinguishing between the insurance policies and the proceeds of the policies, they emphasize that the insurance proceeds are not property of the bankruptcy estates.  In their view, the mere existence of potential indemnification coverage for enivid and Sabine does not transform proceeds into estate property.  They characterize the interests of the post-confirmation Plan Trustees as mere claims against the D&O Policies and distinguish decisions cited by the Plan Trustees, emphasizing the status of the parties enjoined as creditors whose claims competed with those of the trustees' constituency. The Shareholder Plaintiffs, in contrast, maintain that they are not creditors of enivid or Sabine and have independent claims under federal securities law which are unrelated to the Plan Trustees' adversary proceedings.  According to the Shareholder Plaintiffs, they have sought relief against the D&O Defendants, not for breaches of the common law fiduciary duties of loyalty and care, but for breaches of different duties, and they have sought damages for different injuries than those claimed by the Plan Trustees. The Shareholder Plaintiffs also argue the Securities Actions are not derivative of those belonging to the corporations and that they will not share in any recoveries by the Plan Trustees. The Shareholder Plaintiffs urge the Court to adopt decisions such as <u>Reliance Acceptance Group, Inc. v. Levin (In re Reliance Acceptance Group, Inc.)</u>, 235 B.R. 548 (D. Del. 1999), in which the court refused to enjoin shareholders from pursuing securities litigation which did not constitute "claims of creditors" belonging  to the bankruptcy trustee, reasoning that the priorities applicable under the Bankruptcy Code to obtain a distribution of estate property do not apply to third parties' independent claims against nondebtors.

The Shareholder Plaintiffs further contend that the Court lacks jurisdiction under 28 U.S.C. § 1334(b) to grant the requests for injunctive relief for the reason that the Securities Actions do not "arise under" title 11 and do not "arise in" or "relate to" the enivid and Sabine bankruptcy cases. In their view, mere speculation that insurance proceeds may someday pay the Plan Trustees' claims in the Divine and RoweCom Adversaries is insufficient to confer bankruptcy jurisdiction for an injunction against prosecution of totally different claims for relief. *See* 28 U.S.C. § 1334(b). The Shareholder Plaintiffs submit that they would sustain substantial harm if their Securities Actions are delayed and their Stipulation of Settlement thwarted. They assert that the Plan Trustees have not shown irreparable harm if the injunction is denied. Finally, the Shareholder Plaintiffs argue that the public interest in favor of the integrity of securities laws is advanced by denial of the Preliminary Injunction Motions.

C. The Intervenors

Filipowski, Cullinane, and Humenansky, who are among the Defendants in the Securities Actions, as well as Defendants in the Divine Adversary, oppose the Plan Trustees' Preliminary Injunction Motions. They urge the Court to reject the precedents cited by the Plan Trustees as inapposite, pointing out that those cases involved attempts by creditors to advance their claims ahead of claims asserted by bankruptcy trustees, which is not the case here. According to the Divine Defendants, judicial efficiency and economy warrant denial of the Plan Trustees' Preliminary Injunction Motions and allowance of the Joint Motion because the Securities Actions will languish while the Plan Trustees' actions proceed. They

10

maintain that the Plan Trustees have no legal right to interfere with the contractual rights of directors and officers to have the proceeds of the D&O Policies applied to the actions against them. They assert that the Plan Trustees have no "super-claim" to the insurance proceeds and have no priority over the independent claims of the Shareholder Plaintiffs. Finally, the Divine Defendants contend that the plain language of the D&O Policies bars the relief requested because in one of the policies at Endorsement 1, Clause 19,  Divine and its subsidiaries waived and released "any automatic stay or injunction to the extent it may apply . . . to the proceeds of such policy . . . ."

D. The Sabine, Inc. Liquidating Trustee's Objection to the Joint Motion

In reply to the briefs filed by the Divine Defendants and the Shareholder Plaintiffs, Panos emphasizes that the injunction requests are "related to" the bankruptcy cases for purposes of jurisdiction, in particular the administration of the bankruptcy estates, because the Shareholder Plaintiffs and the Plan Trustees are pursuing the same limited pool of insurance proceeds.  In his view, the settlement of the Securities Actions will diminish the assets to be liquidated for the benefit of creditors of enivid and Sabine.  Panos frames the issue presented as whether the Plan Trustees have an interest in the proceeds of the D&O Policies as claimants, not whether the proceeds or D&O Policies are property of the estate, thus obviating a determination of the latter issue on which courts disagree.  Panos also contends that the D&O Policies' provisions concerning the waiver of the benefits of the automatic stay and injunctive relief are unenforceable and are not binding on the Plan Trustees.  In conclusion, Panos argues that the requested injunctions are consistent with

11

judicial efficiency as, in his view, resolution of the Plan Trustees' actions first will conserve

time, money and judicial resources.

## IV. DISCUSSION

At the outset, the Court concludes that the issue of whether the D&O Policies or their

proceeds are property of the estate is not determinative of the Plan Trustees' Preliminary

Injunction Motions. *See* Ochs v. Lipson (In re First Cent. Fin. Corp.), 238 B.R. 9, 16 (Bankr.

E.D.N.Y. 1999) (recognizing that the majority of courts consider D&O policies property of the

estate, but that there is an increasing view that a distinction should be drawn with regard to

proceeds under such policies). *See also* Underwriters at Lloyd's, London v. Chancellor Corp.

(In re Adley), 333 B.R. 587, 611 (Bankr. D. Mass. 2005). Moreover, the Court concludes that

it has "related to" jurisdiction with respect to consideration of the dispute before it under the

standard articulated by the United States Court of Appeals for the First Circuit in Boston

Regional Med. Center, Inc. v. Reynolds (In re Boston Regional Med. Center, Inc.), 410 F.3d

100 (1st Cir. 2005);[8] In re G.S.F. Corp., 938 F.2d 1467, 1475 (1st Cir. 1991)(citing Pacor

---

[8] In Boston Regional, the First Circuit observed the following:
   On its face, section 1334 does not distinguish between pre-confirmation
and post-confirmation jurisdiction. Nonetheless, courts sometimes have
found a need to curtail the reach of related to jurisdiction in the
post-confirmation context so that bankruptcy court jurisdiction does not
continue indefinitely. *See, e.g.,* In re Pegasus Gold Corp., 394 F.3d 1189,
1193-94 (9th Cir.2005) (suggesting that post-confirmation bankruptcy
court jurisdiction is necessarily more limited than pre-confirmation
jurisdiction); In re Resorts Int'l, Inc., 372 F.3d 154, 164-69 (3d Cir.2004)
(similar).
   The rationale behind this line of decisions starts with the premise that a
reorganized debtor is emancipated by the confirmation of a reorganization
plan. It emerges from bankruptcy and enters the marketplace in its

v. Higgins, 743 F.2d 984, 994 (3d Cir. 1984)).[9] Under this liberal standard, it is *conceivable* that

> reincarnated form. From that point forward, it is just like any other corporation; "it must protect its interests in the way provided by the applicable non-bankruptcy law," without any special swaddling. Pettibone Corp. v. Easley, 935 F.2d 120, 122-23 (7th Cir.1991). Given the broad sweep of related to jurisdiction, applying the general rule without qualification after the confirmation of a reorganization plan easily could result in the bankruptcy court retaining jurisdiction of all cases affecting the reorganized debtor for many years thereafter. This prospect not only would work an unwarranted expansion of federal court jurisdiction but also would unfairly advantage reorganized debtors by allowing such firms to funnel virtually all litigation affecting them into a single federal forum. *See* id. at 122.

410 F.3d at 106.  The court concluded:

> The existence vel non of related to jurisdiction must be determined case-by-case. *See* Pegasus Gold, 394 F.3d at 1194 (recognizing that post-confirmation related to jurisdiction should be determined with "a certain flexibility"). The language of the jurisdictional statute, 28 U.S.C. § 1334, is protean, and what is "related to" a proceeding under title 11 in one context may be unrelated in another. With this in mind, we feel confident that there will be situations in which the fact that particular litigation arises after confirmation of a reorganization plan will defeat an attempted exercise of bankruptcy jurisdiction. *See, e.g.*, Resorts Int'l, 372 F.3d at 166-68. We are equally confident, however, that there are other situations in which the fact that particular litigation arises after confirmation of a reorganization plan will not defeat an attempted exercise of bankruptcy jurisdiction.
>
> Insofar as we can tell, no court has yet addressed the scope of post-confirmation related to jurisdiction in a case involving a liquidating plan of reorganization. For the reasons alluded to above, *we hold that when a debtor (or a trustee acting to the debtor's behoof) commences litigation designed to marshal the debtor's assets for the benefit of its creditors pursuant to a liquidating plan of reorganization, the compass of related to jurisdiction persists undiminished after plan confirmation.*

Id. at 107 (emphasis supplied).

[9] "The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." Pacor, 743 F.2d at 994 (citations omitted).

the allowance or disallowance of the Preliminary Injunction Motions and the Joint Motion

will have an effect on the Plan Trustees' potential recoveries from the D&O Policies'

proceeds. As noted by the court in <u>EXDS, Inc. v. CB Richard Ellis, Inc. (In re EXDS, Inc.)</u>, 352

B.R. 731 (Bankr. D. Del. 2006), however,

> "A key word in this test is 'conceivable.' Certainty, or even likelihood, is not
> a requirement." <u>In re Marcus Hook</u>, 943 F.2d at 264. However, the broad reach
> of "related to" jurisdiction "does not extend indefinitely, particularly after the
> confirmation of a plan and the closing of a case." <u>In re Resorts Int'l, Inc.</u>, 372
> F.3d at 164 (quoting <u>Donaldson v. Bernstein</u>, 104 F.3d 547, 553 (3d Cir.1997)).
> Once a plan has been confirmed, a bankruptcy court's jurisdiction over matters
> related to the case diminishes. <u>AstroPower Liquidating Trust v. Xantrex Tech.,
> Inc. (In re AstroPower Liquidating Trust)</u>, 335 B.R. 309, 323 (Bankr.D.Del.2005).
> The Third Circuit has noted that "[a]t the most literal level, it is impossible for
> the bankrupt debtor's estate to be affected by a post-confirmation dispute
> because the debtor's estate ceases to exist once confirmation has occurred." <u>In
> re Resorts Int'l, Inc.</u>, 372 F.3d at 165. However, courts do not apply the "effect
> on the estate" test from <u>Pacor</u> so literally as to exclude all jurisdiction over
> post-confirmation disputes. <u>Id.</u> Courts may exercise post-confirmation
> jurisdiction when "there is a close nexus to the bankruptcy plan or proceeding,
> as when a matter affects the interpretation, implementation, consummation,
> execution, or administration of a confirmed plan or incorporated litigation
> trust agreement." <u>Id.</u> at 168-69.

352 B.R. at 734. *See also* <u>In re Polar Molecular Corp.</u>, 195 B.R. 548 (Bankr. D. Mass. 1996).

Although the Court has jurisdiction to consider the Preliminary Injunction Motions, the

Court concludes that there is no authority for conflating the existence of "related to"

jurisdiction with entitlement to injunctive relief under 11 U.S.C.§ 105(a). The Plan Trustees

have jurisdiction to pursue the Divine and RoweCom Adversaries under the First Circuit's

decision in <u>Boston Regional Medical Center</u>, 410 B.R. at 107; their ability to obtain injunctive

relief against third parties settling with nondebtors with respect to the D&O Policies is a

separate issue.

Given the existence of bankruptcy jurisdiction to determine the Preliminary Injunction Motions, the Plan Trustees have not shown entitlement to an injunction under 11 U.S.C. § 105(a) to prevent settlement of the Securities Actions. In this Court's view, the determinative issue is whether enjoining the Securities Actions is warranted where both the Shareholder Plaintiffs and the D&O Defendants are non-debtors, where the D&O Policies have specific priority provisions for coverage of losses, where the Plan Trustees are asserting different claims from those asserted by the Shareholder Plaintiffs against some of the same Defendants, and where the only impact on the administration is that the Shareholder Plaintiffs will recover from the D&O Policies before the Plan Trustees potentially are able to obtain judgments against, or settlements with, the Divine Defendants and Sullivan in the Divine and RoweCom Adversaries.

In Monarch Life Ins. Co. v. Ropes & Gray, 65 F.3d 973 (1st Cir. 1995), the United States Court of Appeals for the First Circuit considered the debtor's former attorneys' request to hold the debtor's subsidiary in contempt for violating an injunction which was part of an order of confirmation.[10]  In evaluating Ropes & Gray's argument that Monarch Life, the

---

[10] The debtor's subsidiary, Monarch Life Insurance Co., had been placed in receivership by the Massachusetts Insurance Commissioner, and its receiver filed an involuntary chapter 11 petition against Monarch Capital Corporation.  Following the entry of a confirmation order in the Chapter 11 case of Monarch Capital, which contained an injunction against any action to enforce any right or obligation under the plan, including the commencement or continuation of any action or proceeding arising from or related to a claim against Monarch Capital, the Monarch Life receivership, or the operations of the Debtor against or affecting various entities and their respective officers, directors, employees, *attorneys* and agents, Monarch Life commenced an action

15

wholly owned subsidiary of the debtor, Monarch Capital, was barred under principles of *res judicata* from litigating the scope of the bankruptcy court's power to enter the injunction in the absence of an appeal from the order of confirmation, the court stated:

> We have held that Bankruptcy Code § 105(a) confers ample power upon the bankruptcy court to enjoin the initiation or continuation of judicial proceedings in a nonbankruptcy forum against nondebtors during the pendency of a chapter 11 case, where the court reasonably concludes that such actions would entail or threaten adverse "impact" on the administration of the chapter 11 estate. *See* In re G.S.F. Corp., 938 F.2d at 1474. *These injunctions serve simply as adjuncts to the automatic stay, see* Bankruptcy Code § 362(a), which ostensibly protects only the debtor and its property from creditor "grab-law" tactics after the "race to the courthouse." *See* Austin v. Unarco Indus., Inc., 705 F.2d 1, 4-5 (1st Cir.), *cert. dismissed*, 463 U.S. 1247, 104 S.Ct. 34, 77 L.Ed.2d 1454 (1983). Since the automatic stay may induce creditors to refocus their recovery efforts upon the chapter 11 debtor's co-obligors, a temporary injunction is sometimes needed to protect nondebtors (e.g., a corporate debtor's principals and managing officers) whose time and energy should not be diverted to collateral lawsuits and away from the effort to reorganize the debtor. Like the automatic stay itself, *see* Bankruptcy Code § 362(c), however, *these accessorial injunctions normally lapse-at the latest-following confirmation of the chapter 11 plan and the closing of the chapter 11 case,* leaving the nondebtor co-obligor once again exposed to pursuit by the discharged chapter 11 debtor's creditors.

Monarch Life, 65 F.3d at 978-979 (emphasis added). With respect to the exercise of power under § 105(a), the First Circuit also has observed: "While 11 U.S.C. § 105(a) does grant the bankruptcy court broad powers to issue any order 'necessary or appropriate to carry out the provisions of this title,' it is an *extraordinary exercise of discretion* to use that power to stay a third party action not involving the debtor.'" In re G.S.F. Crop., 938 F.2d at 1474 ("there must be some effect on the debtor's estate stemming from the action before there is bankruptcy

---

against Ropes & Gray in the state court. Ropes & Gray then filed a motion for civil contempt against Monarch Life in the bankruptcy court.

court jurisdiction to enjoin it").

The Court finds that the Plan Trustees have failed to satisfy the First Circuit's test for the entry of injunctive relief under 11 U.S.C.§ 105(a). In the first place, they have failed to show that there will be an adverse impact on the *administration of the bankruptcy estates*. The automatic stay is no longer in effect in the enivid and Sabine cases, *see* 11 U.S.C. § 362(c),[11] and the assets of the bankruptcy estates were transferred to the Liquidating Trusts which were established pursuant to Chapter 11 plans confirmed over two years ago. The Debtors' assets and the Examiner's rights vested in the Liquidation Trusts, and the bankruptcy estates ceased to exist, having been succeeded by the Liquidating Trusts. Moreover, the Official Committee of Unsecured Creditors has been disbanded in the enivid case. *See* In re Consolidated Pioneer Mortg. Entities, 248 B.R. 368, 376 (B.A.P. 9th Cir. 2000)("In a typical reorganization, once a plan is confirmed, a reorganized debtor no longer owes a fiduciary duty to the estate because the estate ceases to exist."); AstroPower Liquidating Trust v.

---

[11] Section 362(c) provides in relevant part the following:

(c) Except as provided in subsections (d), (e), (f), and (h) of this section –

 (1) the stay of an act against property of the estate under subsection (a) of this section continues until such property is no longer property of the estate;

 (2) the stay of any other action under subsection (a) of this section continues until the earliest of –

  (A) the time the case is closed;

  (B) the time the case is dismissed; or

  (C) if the case is a case under . . .chapter . . .11 . . ., the time a discharge is granted or denied.

11 U.S.C. § 362(c). As noted in footnote 1, this Court confirmed liquidating plans in the enivid and Sabine cases over two years ago. The Debtors were not discharged pursuant to 11 U.S.C. § 1141(d)(3)(A).

<u>Xantrex Tech., Inc. (In re AstroPower Liquidating Trust)</u>, 335 B.R. 309, 323 (Bankr. D. Del. 2005).

Administration connotes planning, executive decision making, and supervision of the bankruptcy estate. The direction of these Chapter 11 cases was established years ago and resulted in, among other things, the decisions to create Liquidating Trusts and to delegate duties to the Plan Trustees to pursue claims against the Divine Defendants and Sullivan. Administration of bankruptcy estates is a different function than, for example, allowance or disallowance of claims by the estate or proceedings affecting the liquidation of the assets of the estate. *Cf.* 28 U.S.C. § 157(b)(1). In these cases, granting the Preliminary Injunction Motions would not be an adjunct to the automatic stay and would be imposed over two years after confirmation, instead of lapsing at the time of confirmation as contemplated by the First Circuit in <u>Monarch Life</u>, 65 F.3d at 978-79. Moreover, the injunctions would not foster the cooperation of the Divine Defendants in formulating and implementing plans of reorganization. Thus, the adverse impact, which the Plan Trustees emphasize, is not on the administration of the bankruptcy estates. Rather, it is only on their potential recoveries from the D&O Policies, assuming they are successful in their actions against the Divine Defendants and Sullivan in the Divine and RoweCom Adversaries, respectively. Accordingly, under the construct formulated by the First Circuit in <u>Monarch Life</u>, the Court finds that the Plan Trustees have failed to demonstrate entitlement to injunctive relief.

Moreover, numerous courts have rejected requests for injunctive relief under circumstances similar to those present in these cases, which have confirmed, liquidating

plans and appear to require little more than resolution of the Divine and RoweCom

Adversaries and the indemnification claims of directors and officers. *See, e.g.,* In re Reliance

Acceptance Group, Inc., 235 B.R. 548 (D. Del. 1999); Official Unsecured Creditors Committee

of Phar-Mor, Inc. v. Bowen (In re Phar- Mor, Inc., Sec. Litig.), 164 B.R. 903, 908 (W.D. Pa.

1994); In re CHS Elec., Inc., 261 B.R. 538, 544 (Bankr. S.D. Fla. 2001); In re First Cent. Fin.

Corp., 238 B.R. at 21; In re Leslie Fay Companies, Inc., 207 B.R. 764, 786 (Bankr. S.D.N.Y.

1997); Goldin v. Primavera Familienstiftung, Tag Assoc., Ltd. (In re Granite Partners, L.P.),

194 B.R. 318, 338 (Bankr. S.D.N.Y. 1996).

For example, the United States District Court for the District of Delaware in In re

Reliance Acceptance Group, Inc., 235 B.R. 548 (D.Del. 1999), in reversing the decision of the

bankruptcy court, determined that it was error to enjoin a shareholder class action against

directors and officers for violations of securities laws even though the estate representative

under the debtors' confirmed plan of reorganization was prosecuting claims for injunctive

relief and fraud related to a stock split-off transaction.  235 B.R. at 561-62.[12]  The court,

---

[12] The court stated the following:
In a federal securities case, where a shareholder may state a claim for
relief under the Securities Exchange Act and Rule 10b-5 based on the same
or similar misconduct as may be asserted in a derivative action, the
shareholder seeks relief based on the defendants' breach of duties owed
under these federal laws and seeks to recover damages for a distinct
injury, such as for example, the difference between an allegedly inflated
price he or she paid for stock and the price he or she would have paid had
defendants made accurate statements. As the court noted in Hayes [v.
Gross, 982 F.2d 104 (3d Cir. 1992)], these are separate causes of action and
allowing the shareholder to pursue a securities claim will neither
prejudice the corporation and its other shareholders nor will it permit a
double recovery for the same injury.

referring to the claims originally advanced by the debtors, rejected the debtors' argument

that the shareholders' litigation, if allowed to go forward, would diminish funds available

under the directors' and officers' liability insurance polices "both because the funds available

through the policies will be diminished as they are paid out to reimburse officers and

directors for the costs they incur in defending the Shareholders' Litigation, and because there

is a risk that if the Shareholders are successful they will grab the amounts available under

the polices . . .[thereby] . . .increase[ing] the amount of the claims for indemnification . . . ."

235 B.R. at 556-57.

The district court in <u>Reliance</u> distinguished the Seventh Circuit's decision in <u>Fisher v.</u>

<u>Apostolou</u>, 155 F.3d 876 (7th Cir. 1998), stating

> The opinion in <u>Fisher</u> stands for the proposition that, while a creditor may
> have a separate cause of action against a corporation's agents for injury
> suffered as a result of their fraud, where the trustee brings a similar action for
> all creditors and that action is based on the same transaction and seeks to
> recover the same damages, the creditor's case is sufficiently related to the
> trustee's work that it should be stayed under section 105 while the bankruptcy
> action proceeds.
>
> In this case, the Shareholders are not bringing litigation as creditors and their
> damages, if any, will not be reduced by amounts they would receive for claims
> filed in the bankruptcy case. The decision in <u>Fisher</u> does not, therefore, support
> the Estate's position that the Shareholders' claims should be enjoined.

235 B.R. at 560. The court concluded:

> [The] issue of the directors' limited resources raises a risk of harm, in that if the

---

235 B.R. at 555. *See also* <u>San Mateo v. At Home Corp. (In re At Home Corp.)</u>, 154 Fed.
Appx. 666 (9th Cir. 2005)(finding that minority shareholders had failed to establish
direct claims independent of any alleged injury to the corporation).

> Shareholders are allowed to proceed they may recover as their damages,
> money that might otherwise go to the Estate. This is the type of harm to which
> a court of equity would normally be sensitive. The difficulty the Debtors have
> had is in identifying a right to the relief; that is, they have been unable to
> identify a legal principle that stands for the proposition that the Estate's claims
> for relief should take precedence over the Shareholders' claims. Absent a right
> to relief, they have no right to an injunction.

Id. at 561.

In In re First Cent. Fin. Corp., 238 B.R. 9 (Bankr. E.D.N.Y. 1999), the Bankruptcy Court

for the Eastern District of New York considered a Chapter 7 trustee's action for declaratory

and injunctive relief to stay a class action with respect to direct shareholder claims against

officers and directors for damages for violations of securities laws in view of his complaint

for fraud, mismanagement, and waste.   The court described the relief sought by the trustee

as follows:

> The thrust of this adversary proceeding is the Trustee's efforts to insulate
> Policy proceeds from distribution to any outside interest, primarily the
> Plaintiffs in the Lipson Action and the Officers and Directors. The Trustee
> would thus have first crack at the D & O Policy proceeds. Any other efforts to
> recover proceeds, if monies remain, must await the satisfaction of insurable
> claims that may arise from the Trustee's mismanagement suit against the
> Officers and Directors. In essence, the Trustee proposes that all non-Trustee
> claims to Policy proceeds, including the Officers' and Directors' claims for
> ongoing litigation expenses in both the Lipson Action and the Trustee's
> mismanagement suit, are to be held in abeyance.

238 B.R. at 15. The D&O policy in question provided liability coverage for directors and

officers for personal losses which were not indemnified by the debtor corporation, as well

as "entity coverage" for the debtor in the event the corporate entity was sued for violations

of securities laws, as well as indirect coverage for reimbursement of monies expended to

21

indemnify its officers and directors. Id. at 13-17. The court held the entity coverage rider was not sufficient to make the D&O proceeds property of the estate, leaving the entity coverage to compete with the liability coverage for the $2 million policy limit. Id. at 16. As such, the court found that a distributive adjustment resulting from allowing the shareholders a dollar-for-dollar recovery from the insurance proceeds rather than a pro rata share with other creditors did not constitute an irreparable harm to the estate. Id. at 20. Additionally, the court found that the trustee did not demonstrate entitlement to an injunction because he presented no evidence that the directors and officers would be unable to satisfy a money judgment. Id. at 21.

In In re CHS Elec., Inc., 261 B.R. 538 (Bankr. S.D.Fla. 2001), shareholders, who had filed a class action involving securities fraud claims against the directors and officers of the debtor, moved for entry of an order approving a proposed settlement to be funded with the proceeds of two directors' and officers' insurance policies. 261 B.R. at 539. The Liquidating Trustee under the liquidating plan confirmed in the debtor's Chapter 11 case opposed the motion on the ground that, if his potential claims against the debtor's former officers and directors were successful, the judgment might exceed the remaining insurance proceeds if the class action settlement were funded. Id. at 539. The United States Bankruptcy Court for the Southern District of Florida determined that the motion for approval of the settlement should be properly treated as a motion for relief from stay. Id. The court stated:

> Cooper's [the trustee] efforts to protect sufficient insurance proceeds to satisfy what he believes will be a large judgment against the Debtor's former officers and directors is certainly consistent with a general policy in favor of

22

maximizing the size of a bankruptcy estate. Unfortunately, Cooper could not
cite to, and this Court is unaware of, any Bankruptcy Code provision or case
law that would give a bankruptcy trustee any different status than a
non-bankruptcy plaintiff with an unliquidated claim against third-parties
which may be covered by insurance proceeds about to be used to settle or
satisfy a judgment entered in favor of other plaintiffs. *See* In re Reliance
Acceptance Group, Inc., 235 B.R. 548, 561-62 (D. Del. 1999) (noting the lack of
such a legal principle); In re Phar-Mor Inc. Securities Litigation, 164 B.R. 903,
905-06 (W.D.Pa.1994).

Id. at 544.

Other decisions reach similar results. In In re Phar-Mor, Inc., Sec. Litig., 164 B.R. 903

(W.D. Pa. 1994), a case cited by the court in CHS Elec., Inc., the United States District Court

for the Western District of Pennsylvania refused to subrogate the rights of equity investors

to bring separate and personal claims for fraud against the defendant auditing company to

those of the debtor by enjoining their separate civil actions.[13]  164 B.R. at 907.  The court

found that the unsecured creditors' committee failed to set forth a "significant and direct"

harm necessary for the issuance of an injunction.  Id.  Because the committee did not

demonstrate that the defendant would be unable to satisfy judgments that exceeded the

available insurance coverage, the court found that the equity actions would not materially

affect or diminish the debtor's claims against the defendant.  Id. at 906.  The court

determined that, absent a showing that the defendant auditor would be unable to satisfy any

judgments against it, additional litigation costs and judgments resulting in the dissipation

of any potential recovery for the debtor was irrelevant. Id. at 907.

---

[13]  A complaint and the motion for preliminary injunction was originally filed in
the debtor's bankruptcy case, but the Judicial Panel on Multidistrict Litigation
transferred the action to district court.

23

Similarly, in In re Granite Partners, L.P., 194 B.R. 318 (Bankr. S.D.N.Y. 1996), the

United States Bankruptcy Court for the Southern District of New York refused to enjoin a

class action brought by investors in the debtor from pursuing claims against the debtor's

insiders for fraudulent inducement, which claims included a claim for securities fraud under

§ 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5, despite the Chapter 11 trustee's

assertion that the class action violated the automatic stay and interfered with property of the

estate in so far as he could look to the same D&O policy to satisfy indemnification claims of

insiders. 194 B.R. at 336. The court determined that the fraudulent inducement claims were

direct, not derivative claims, belonged to the shareholders, and could be asserted by them

without violating the automatic stay Id. at 327. It held that the directors' and officers' right

to liability coverage was not property of the estate, and, therefore, the automatic stay did not

bar the fraudulent inducement suits. Id. at 337-338. The court framed the issue as whether

the automatic stay should be extended under 11 U.S.C. § 105(a) and principles articulated in

Johns-Manville Corp. v. Asbestos Litig. Group (In re Johns-Manville Corp.), 26 B.R. 420

(Bank. S.D.N.Y. 1983), aff'd in part, 40 B.R. 219 (S.D.N.Y. 1984), rev'd in part on other grounds,

41 B.R. 926 (S.D.N.Y. 1984), and A.H. Robins Co. v. Piccinin ( In re A.H. Robins Co.), 788 F.2d

994 (4th Cir.1986), cert. denied, 479 U.S. 876 (1986), which it summarized as follows: "[a]

court can and should enjoin suits by third parties against third parties if they threaten to

thwart or frustrate the debtor's reorganization efforts." 194 B.R. at 337. The court determined

that, absent a showing that the continuation of the lawsuits for corporate waste and securities

law violations would frustrate or thwart the reorganization because of their effect on the

24

insurance coverage, an injunction was unwarranted. Id. at 338. Noting that the debtor was

not operating, that the trustee was liquidating estate assets, and that the actions the trustee

sought to halt would not collaterally estop him in subsequent litigation, the court found that

the possibility that indemnification obligations might increase was an insufficient ground for

injunctive relief as such a possibility exists in most instances where creditors of the debtor

sue its officers and directors under D&O policies. Id. See also In re Leslie Fay Cos., Inc., 207

B.R. 764, 787 (Bankr. S.D. N.Y. 1997).

Although the decisions discussed above lend support to the positions advanced by

the Shareholder Plaintiffs and the Intervenors, the positions advanced by the Plan Trustees

are not without support in the case law. The Plan Trustees rely primarily on the Seventh

Circuit's decision in Fisher v. Apostolou, 155 F.3d 876 (7th Cir. 1998), as well as the decision

in Megliola v. Maxwell, 293 B.R. 443 (N.D. Ill. 2003), aff'g, Maxwell v. Megliola (In re

marchFIRST, Inc.), 288 B.R. 526 (Bankr. N.D. Ill. 2002). Neither mandates the issuance of an

injunction in these proceedings, however, as they are factually distinguishable from the

enivid and Sabine cases.

The Apostolou case, which did not concern directors' and officers' insurance policies,

involved a "bucket shop" scam (similar to a Ponzi scheme) whereby the principal of the

debtor corporation and his accomplices used the corporate entity to engage in commodities

fraud. 155 F.3d at 877-78. Investors, denominated the Apostolou Plaintiffs, who were also

estate creditors, brought securities fraud actions against the debtors' accomplices, the

Apostolou Defendants. The trustee filed a "Complaint to Enforce the Automatic Stay, or in

the Alternative, to Obtain Injunctive Relief" to enjoin the Apostolou Plaintiffs until he

completed prosecution of the estate's claims. <u>Id.</u> at 878-879. The bankruptcy court entered

an injunction under § 105(a), finding that both the Trustee and the Apostolou Plaintiffs were

"pursuing the same dollars from the same defendants to redress the same harms." <u>Id.</u> at

879.[14] In summarizing the issue raised by the district court's reversal of the bankruptcy

court's injunction, the Seventh Circuit stated:

> [T]his is a case in which the question is . . . whether the overlap between the
> claims of the debtor (Lake States) and the claims of *the creditors* (the Apostolou
> Plaintiffs) against third parties (the Apostolou Defendants) are so closely
> related that allowing the creditors to convert the bankruptcy proceeding into
> a race to the courthouse would derail the bankruptcy proceedings.

<u>Id.</u> at 882-83 (emphasis supplied). The court, in reinstating the injunction, reasoned:

> The Apostolou Plaintiffs['] . . . claims arise from the misuse of their funds by
> Lake States and its agents to prop up or profit from the bucket shop scheme. To
> the extent they are suing the agents . . . for debts that arose out of these
> transactions, they stand in exactly the same position as the rest of the aggrieved
> investors, pursuing identical resources for redress of identical, if individual,
> harms. *As creditors* with claims so closely related to the Lake States [sic] estate,
> the Apostolou Plaintiffs must wait their turn behind the trustee, who has the
> responsibility to recover assets for the estate on behalf of the creditors as a
> whole, . . . and is pursuing them to maximize the debtors' estates for the benefit

---

[14] The bankruptcy court determined that the claims of the investors, the
Apostolou Plaintiffs, were property of the debtor's estate under 11 U.S.C. § 541. <u>Id.</u> at
879. The Seventh Circuit stated that "[w]hile the Apostolou Plaintiffs' claims are not
'property of' the Lake States estate, it is difficult to imagine how those claims could be
more closely 'related to' it," adding

> They are claims to the same limited pool of money, in the possession of
> the same defendants, as a result of the same acts, performed by the same
> individuals, as part of the same conspiracy. We can think of no
> hypothetical change to this case which would bring it closer to a "property
> of" case without converting it into one.

<u>Id.</u> at 882

of their *creditors*, including the Apostolou Plaintiffs.

Id. at 881 (citations omitted) (emphasis supplied).

Unlike Apostolou, the decision in In re marchFIRST, Inc., 288 B.R. 526 (Bankr. N.D.

Ill. 2002), involved a debtor's directors' and officers' insurance policy. In that case, numerous

shareholders brought suits against the directors and officers of the debtor corporation for

securities fraud. The Chapter 7 trustee filed a complaint for a preliminary injunction under

11 U.S.C. §§ 105(a) and 362(a)(3), seeking to enjoin the suits to preserve the limited proceeds

available under the D&O policy for the estate's claims for breaches of fiduciary duties against

the same directors and officers. Id. at 528-529. The bankruptcy court determined that "[t]he

Debtors had and the Trustee has contractual rights governed by the terms of the insurance

policies" . . . [and that] . . . [u]nless and until the terms are met, which they may never be, the

proceeds are not property of the estate," adding that "[w]ithout Fisher [v. Apostolou], no

injunction would issue here. Id. at 530. The bankruptcy court stated:

> There is a difference between Fisher and this case. There, the District Court
> cases were brought by defrauded investors; here the outside litigation has been
> brought by allegedly defrauded shareholders. Nevertheless, this Court's
> reading of Fisher requires it to issue a preliminary injunction. All of the parties
> herein seek redress against the directors and officers who ran marchFIRST and
> its affiliates. All of the parties herein seek damages arising from the same or
> similar transactions and acts allegedly committed by the directors and officers,
> albeit under different legal theories. All of the parties hope to be recompensed
> from the proceeds of the insurance policies. While "related to" jurisdiction
> cannot be limitless, "the language of § 1334(b) must be read to give district
> courts (and bankruptcy courts under § 157(a)) jurisdiction over more than
> simple proceedings involving the property of the debtor or the estate.

288 B.R. at 531-32(citations omitted). The bankruptcy court found that the suit between the

investors and the directors and officers would "affect the orderly administration of the estate." Specifically, it found the following:

> If the shareholders obtain a judgment against the directors and officers, the insurers will either make a payment to the plaintiffs or deny coverage. If coverage is denied, the Trustee and the shareholders will be in pursuit of mostly the same assets of mostly the same individuals. If the insurers agree to pay the shareholders, the amount that the Debtors may be obliged to indemnify the directors and officers will be diminished. However, since the funds available to the directors and officers to pay a judgment are the same funds available to the Debtors to indemnify them, a shortfall of funds would affect the administration of the estate. Furthermore, because the Defendants have not delineated a dollar figure for damages in their complaint against the directors and officers, a judgment obtained by the Defendants in the District Court Action has the potential effect of leaving no funds available to pay a judgment obtained by the Trustee in the Trustee Action.

Id. at 532 (footnotes omitted).

The Illinois bankruptcy court, in reaching its decision, rejected the reasoning of the District Court in In re Reliance Group, Inc., finding that, if it were to adopt that reasoning, it would be limiting the holding of the Seventh Circuit in Fisher v. Apostolou. Id. The court added: "[e]ven under the best of circumstances in a chapter 7 bankruptcy, not everyone gets paid. This is not a rationale for allowing every party with a grievance related to the case to bring his own lawsuit." Id. at 533.

On appeal, the United States District Court for the Northern District of Illinois affirmed the bankruptcy court's issuance of the injunction. Megliola v. Maxwell, 293 B.R. at 444. The district court cited the bankruptcy court's recognition of the factual difference between the marchFIRST and Fisher v. Apostolou cases, namely the status of the defendants as shareholders and investors, respectively. It stated:

28

> We agree with the bankruptcy court's reading of Fisher and the appellants' attempt to distinguish the case fails. Appellants argue that the plaintiffs in Fisher "were estate creditors and *for this reason alone* were required 'to wait their turn behind the trustee.'" . . . We believe that the this is an incorrect characterization of Fisher (the plaintiffs' status as creditors was not the single dispositive factor), and we do not find the factual distinction meaningful in any event.

Id. (footnote and citation omitted). In a footnote, the district court rejected In re Reliance Group, Inc., finding that it failed "to explain why a plaintiff's status of shareholder rather than creditor makes a difference in the 'related to' analysis" and "does not discuss the general principles of 'related to' jurisdiction." Id. at 449 n. 5.

The courts in marchFIRST, and Megliola were bound by the Seventh Circuit's holding in Apostolou. It appears, however, that they may have extended the holding beyond what was necessary to give effect to the Seventh Circuit's holding and did not attend to the Seventh Circuit's emphasis on the concomitant roles of the enjoined parties as both plaintiffs and creditors. This Court is not bound by the decision in Apostolou or its progeny. Under the facts of this case where post-confirmation Plan Trustees are seeking injunctive relief, the Court finds that granting the Preliminary Injunction Motions under § 105(a) would be jurisdictionally and equitably improper.

The Seventh Circuit in Apostolou stated:

> *In limited circumstances,* the trustee may *temporarily block* adjudication of claims that are not property of the estate by petitioning the bankruptcy court to enjoin the other litigation, if it is sufficiently "related to" her own work on behalf of the estate. 28 U.S.C. § 1334(b). The jurisdiction of the bankruptcy court to stay actions in other courts extends beyond claims by and against the debtor, to include "suits to which the debtor need not be a party but which may affect the amount of property in the bankrupt estate," or "the allocation of property

29

among creditors."

Id. at 882(emphasis added, citations omitted). The competing claims between the parties in Fisher v. Apostolou overlapped, at least in part, and for that reason the court required the investor/plaintiffs to wait their turn behind the trustee, a conclusion supported by the court's use of three different denominations for the securities action plaintiffs in that case: the "Apostolou Plaintiffs," the "investors," and the "creditors." *See* 155 F.3d at 880.

Even if one were unconvinced that use of the word "creditors" alone had a specific and narrow meaning, a review of the court's reasoning supports the interpretation that the parties enjoined must be creditors of the bankruptcy estate. First, the court framed the issue as "whether a suit must be brought by the trustee on behalf of *the creditor class* as a whole or [whether it] may be brought by an individual." Id. at 880 (emphasis supplied). Second, the court's analysis relied heavily on Bankers Trust Co. v. Rhoades, 859 F.2d 1096 (2d. Cir. 1988), a case in which the court dismissed, without prejudice, a RICO action brought by the debtor's creditors against the debtor's officers until the trustee's claims against the same defendants were resolved. The import of the Bankers Trust case, as described by the court in Fisher v. Apostolou, was that the creditor, Bankers Trust, and debtor were both injured from identical conduct, and "to the extent that the . . . trustee could recover for [the debtor's] injury, the portion of Bankers' injury *stemming from its status as creditor* of [the debtor] would be correspondingly reduced." 155 F.3d at 881 (emphasis added).

The district court in Megliola was correct to the extent that it was not the Apostolou Plaintiffs' status as estate creditors *alone* that warranted the injunction. This is clear from the

30

Apostolou court's assessment that

> [I]t is difficult to imagine how those claims could be more closely 'related to' [the property of the estate]. They are claims to the same limited pool of money, in the possession of the same defendants, as a result of the same acts, performed by the same individuals, as part of the same conspiracy.

Id. at 882. It is equally clear, however, that the court's reasoning, as discussed above, was strongly influenced by the status of the Apostolou Plaintiffs as estate creditors who would benefit from the trustee's action. Id. at 881. Thus, the cases relied upon by the Plan Trustees, Fisher v. Apostolou in particular, are factually distinguishable and are not valid precedent for the injunction requested.

The Court finds that the present case is similar to the well-reasoned decision in In re Reliance Acceptance Group., Inc., 235 B. R. 548 (D. Del. 1999), and chooses to follow its analysis. There, the court declined to enjoin a securities action, observing that the claims of the securities plaintiffs were not the same claims as those asserted by the estate's creditors. The court found Fisher v. Apostolou to be inapplicable for several reasons, most notably, the absence of any relationship between the shareholder action and the claims against the estate. It stated: "[i]n this case, the Shareholders are not bringing litigation as creditors and their damages, if any, will not be reduced by amounts they would receive for claims filed in the bankruptcy case." Id. at 560.

In the present case, the Shareholder Plaintiffs seek damages for violations of federal securities laws by the directors and officers of Divine. Their claims are distinct from those asserted by the Plan Trustees' in the Divine and RoweCom Adversaries. Although the

actions may have the same target defendants and involve some of the same conduct, they state totally different claims for relief, and liability is based on different theories. The claims of the Shareholder Plaintiffs are not derivative of the claims of creditors or the former bankruptcy estates and do not belong to the Plan Trustees. Their claims are personal and arise from alleged breaches of different duties, resulting in different injuries for which different damages are claims. *See* In re Reliance Acceptance Group, Inc., 235 B.R. at 555. Additionally, as shareholders and not creditors of the former bankruptcy estates, the Shareholder Plaintiffs will not benefit from the Plan Trustees' recoveries, if any, under the D&O Policies' proceeds.

The existence of D&O Policies, which are subject to the unliquidated, contingent claims of the Plan Trustees and the settled claims of the Shareholder Plaintiffs who have suffered a loss within the meaning of those policies, does not form the basis for extraordinary injunctive relief favoring the Plan Trustees over the Shareholder Plaintiffs and the D&O Defendants simply because the Plan Trustees happen to have obtain their status through confirmation of liquidating plans. While the amount of insurance proceeds available to the Plan Trustees will be reduced, that is not so extraordinary a circumstance as to warrant exercise of the Court's limited, "related to" jurisdiction to enter an injunction under § 105(a), particularly in view of the First Circuit's decision in Monarch Life. The right of the parties to pursue the same assets and individuals is not, in and of itself, a cognizable theory in support of an injunction.

The Plan Trustees are asking for an injunction that would restrain disbursement of the

insurance proceeds until their share can be finally determined. They have not advanced a legitimate reason why their claims against the directors and officers of enivid and Sabine should be elevated to a higher priority than the claims of the Shareholder Plaintiffs, which would be the effect of injunctive relief. Allowance of the Plan Trustees' request for injunctive relief against settlement of the Securities Actions would constitute a determination that the Plan Trustees' claims for breaches of the fiduciary duties of care and loyalty take precedence over the claims and settlements of the Shareholder Plaintiffs under federal securities laws. There is simply no basis in the Bankruptcy Code or other applicable law for such an order. In re Reliance Acceptance Group, Inc., 235 B.R. at 561 (there is no legal principal stating that the estate's claims take precedence over those of the shareholders in separate causes of action against the same defendant). Although the Plan Trustees may have a right *vis à vis* the other insureds to a share of the policy proceeds, they have not yet established a loss under the terms of the D&O Policies, unlike the Shareholder Plaintiffs who have demonstrated a present right to the policy proceeds by virtue of their settlement of the Securities Action.

## V. CONCLUSION

In accordance with the foregoing the Court shall issue an order denying the Plaintiffs'

Motion for Preliminary Injunction and granting the Joint Motion.

By the Court,

Joan N. Feeney
United States Bankruptcy Judge

Dated: March 16, 2007